IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BENJAMIN E. VANCE,

   Petitioner,

   v.

WARDEN FRANK B. BISHOP, JR.,
THE ATTORNEY GENERAL OF THE
  STATE OF MARYLAND,

   Respondents.

Civil Action No.:  ELH-18-133

**MEMORANDUM OPINION**

The self-represented Petitioner, Benjamin E. Vance, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, naming Warden Frank Bishop, Jr. and the Attorney General of Maryland as Respondents. ECF 1 (the "Petition"). He challenges his conviction in the Circuit Court for Prince George's County, Maryland for murder and related offenses. *Id.* The Petition is supported by exhibits. ECF 1-1.

Respondents assert that three of the four grounds raised by Vance are unexhausted and the Petition must therefore be dismissed. ECF 9. The Court advised Vance of the legal implications of Respondents' assertion and of his right to file a reply indicating whether he wanted to withdraw any unexhausted claims or, alternatively, to demonstrate why the merits of the claims should nevertheless be reached by this court. ECF 12; ECF 13. Vance filed his reply (ECF 14), along with an exhibit (ECF 14-1), withdrawing his second claim. But, he argues that the other three claims warrant this court's consideration on the merits. ECF 14.

The court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018); *see also*

*Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).  For the reasons set forth below, the Petition shall be dismissed and a certificate of appealability shall not issue.

## I.    Background

On May 11, 2011, James Speaks, Jr. was found in a parking lot at a convenience store in Oxon Hill, Maryland, suffering from multiple gunshot wounds fired at close range.  *See* ECF 11-1 at 2.  Speaks was situated about thirteen feet from his vehicle.  Speaks was transported to a hospital emergency room, but was pronounced dead on arrival.

Vance was convicted of the murder.   The primary evidence used to convict Vance was the testimony provided by Travis Bonner and David Hester.  *See* ECF 9-2 at 7-11.  In addition, Vance's thumbprint was recovered from the door handle of the car.  *Id.* at 2.

Bonner knew Vance as an "older guy" from the neighborhood, and had known him for at least ten years.  *Id*. at 8.  On May 11, 2011, Bonner met Hester around noon and the two men when to a liquor store in Largo, Maryland and then to Bonner's home, where they played video games and smoked marijuana.  *Id*.  According to Bonner, when he and Hester ran out of marijuana and could not find any to buy in the neighborhood, Hester reminded him that James Speaks, whom they had seen at the liquor store, had "higher quality" weed.  *Id*  When they contacted Speaks, he indicated he had left the area and Bonner told him he would try to arrange a meeting with him later.  *Id*.

Bonner and Hester picked up Vance in Washington D.C.  ECF 9-2 at 8.  The three men watched television and drank beer together before continuing the hunt for more marijuana.  *Id*. at 9.  Bonner got in touch with Speaks and arranged to meet him in Oxon Hill at a convenience store so he, Hester, and Vance could purchase marijuana.  *Id*.  Bonner testified that they arrived first and

2

when Speaks arrived he parked next to them. *Id*. Bonner gave Vance $60 to buy a quarter ounce of marijuana; Vance left Bonner's truck and got into Speaks's vehicle. *Id*.

Bonner testified that once in Speaks's vehicle, he saw Vance take out a black bag and sniff the contents. ECF 9-2 at 9. For reasons not clear to Bonner or Hester, Vance and Speaks started "tussling" and shortly thereafter Bonner and Hester heard what they thought were multiple gunshots. *Id*. Bonner ducked and began to pull his car out of the parking space when Vance got back into the truck. *Id*. According to Bonner, Vance stated that "it wasn't my fault" and "I think I killed him." *Id*. Bonner observed Speaks lying on the ground as they drove away from the scene. *Id*. Bonner then dropped Hester and Vance off at the Minnesota Avenue Metro station. *Id*.

Hester's testimony confirmed Bonner's version of events. He testified that they picked up Vance at the Hechinger Mall off Benning Road in Washington, D.C. and that he got in the rear seat of the truck so that Vance could sit up front. ECF 9-2 at 10. Hester recalled meeting Speaks at the convenience store, Bonner giving Vance twenty-dollar bills, and Vance getting into the front seat of Speaks's car while he and Bonner waited in Bonner's truck. *Id*. at 11. According to Hester, he and Bonner were not paying attention but then heard what they thought were gunshots. *Id*. Hester stated that he leaned over toward the middle of the truck and when he looked up, Vance was jumping into Bonner's truck, holding a bag of marijuana. *Id*. Hester recalled Vance saying that Speaks told him "he's the police." *Id*. After Bonner dropped off Hester and Vance, Hester took the train to the New Carrollton Station, but then called Bonner to pick him up after he missed the last bus to his house. *Id*.

A jury in the Circuit Court for Prince George's County convicted Vance of murder, robbery, armed robbery, and unlawful use of a handgun. ECF 9-3 at 2. On April 2, 2013, the court sentenced Vance to life imprisonment for the murder conviction and to 20 years, concurrent, for

the handgun offense. All other charges merged. *Id*. Vance's conviction was affirmed by the Maryland Court of Special Appeals on February 12, 2014. *See Vance v. State*, No. 448, Sept. Term 2013, ECF 9-3; ECF 11-1. The mandate issued on April 4, 2014. ECF 9-1 at 16. The Maryland Court of Appeals denied certiorari on June 24, 2014. ECF 9-1 at 16-17; *see also Vance v. State*, 438 Md. 741 (2014).

On direct appeal, Vance raised the following claims: (1) the trial court erred when it denied defense counsel's *Batson* challenge; (2) the trial court erred when it did not allow the admission of prior inconsistent statements made by David Hester; (3) the trial court erred when it allowed prior consistent statements by Travis Bonner; (4) the evidence at trial was insufficient to sustain a conviction for unlawful use of a handgun because the State did not provide evidence that the weapon used was a handgun; and (5) the trial court erred when it permitted a firearms examiner to use a handgun capable of firing 9mm cartridges as a demonstrative device and erred in allowing the prosecutor to use a toy handgun as a demonstrative exhibit in rebuttal argument. ECF 9-2, Appellant's Brief.

In affirming the conviction, the Maryland Court of Special Appeals issued a 25-page unreported opinion. It concluded that Vance's *Batson* claim was not preserved for appellate review and was without merit. The court said, ECF 11-1 at 7-10:

> Under *Batson v. Kentucky*, 476 U.S. 79 (1986) a party may not use a peremptory challenge to exclude potential jurors based on a juror's race or gender. To trigger a full *Batson* analysis, the objecting party must make a *prima facie* showing of intentional discrimination. *Id*. at 94. If the trial court determines that the *prima facie* case has been established, the burden shifts to the party exercising the strike to offer a racially neutral explanation and, finally, the trial court will then determine whether purposeful discrimination has occurred. *Id*. at 94-97; *see Khan v. State*, 213 Md. App. 554, 567-71 (2013) (applying the three-step *Batson* formula to review the trial court's determination regarding the exercise of peremptory challenges by the defendant).

4

However, if the trial judge finds that the objecting party has failed to establish a *prima facie* case, "there is no obligation on the prosecutor to offer any explanation for the use of a peremptory challenge and no entitlement of the defendant to a hearing on the issue." *Gorman v. State*, 315 Md. 402, 411 (1989), *vacated on other grounds*, 499 U.S. 971 (1991). In other words, the moving party must establish a *prima facie* case in order to trigger any further inquiry by the trial court. *Bailey v. State*, 84 Md. Ap. 323, 327 (1990). Absent a *prima facie* case, the trial court has no obligation to conduct a further inquiry. A trial court's decision as to whether a moving party has made a *prima facie* case will not be reversed unless it is clearly erroneous, *Whittlesey v. State*, 340 Md. 30, 48 (1995), or a clear abuse of discretion, *Bailey*, 84 Md. App. at 326, 329. *See also Bridges v. State*, 116 Md. App. 113, 134 (1997).

The basis for [Vance's] *Batson* challenge is that the nine prospective jurors stricken by the State were female African Americans. Other than this bare statistic, the appellant tells us nothing about the composition of the venire as a whole or the racial or gender-based composition of the final jury panel of twelve plus two alternates. We know from the observation of the trial judge, however, that the final jury panel contained eight female African Americans and that the panel as a whole was mostly African American. At the end of jury selection, the State had one strike remaining, which it did not use.

We agree that [Vance's] *Batson* challenge is not preserved. "[A] defendant's claim of error in the inclusion or exclusion of a prospective juror or jurors is ordinarily abandoned when the defendant or his counsel indicates satisfaction with the jury at the conclusion of the jury selection process." *Gilchrest v. State*, 340 Md. 606, 616-18 (1995) (quoting *Mills v. State*, 310 Md. 33, 40 (1987), *vacated on other grounds*, 486 U.S. 367 (1988)); *see also State v. Stringfellow*, 425 Md. 461, 469-70 (2012) (noting that a party waives his voir dire objection going to the inclusion or exclusion of a prospective juror by unqualifiedly accepting the seated jury panel at the conclusion of the jury-selection process). Here, the trial court denied the appellant's *Batson* challenge and, after the selection of two alternates, [Vance] agreed without qualification that he was satisfied with the final jury panel. [Vance's] claim, therefore, is waived. . . .

However, even if this claim were preserved, we would nevertheless reject it. We consider a trial court's *Batson* decisions using a deferential standard of review. . . . This deferential standard of review applies not only to the trial court's decision at the end of a three-step *Batson* analysis, but also to the initial determination of whether or not a defendant has made a *prima facie* case. *See e.g., United States v. Martinez*, 621 F.3d 101, 109-10 (2d Cir. 2010); *State v. Taylor*, 694 A.2d 977, 980 (N.H. 1997).

In this case, the trial court concluded that Vance had failed to make a *prima facie* showing of intentional discrimination, noting that eight female

5

>African Americans were members of Vance's jury and that the jury panel was "mostly" African American. The State had one more strike but did not use it, a fact that supports the trial court's decision. *See Taylor*, 694 A.2d at 980.

The intermediate appellate court found Vance's claim regarding the exclusion of Hester's prior inconsistent statements partially meritorious because the trial court's decision excluding the statements was erroneous. ECF 11-1 at 12. However, the court found that the error was harmless because the substance of the excluded evidence, which defense counsel used during cross-examination, was known to the jury and the evidence against Vance was substantial. *Id*. at 13. According to the court, because "a reasonable jury, beyond a reasonable doubt, would not have been influenced by the excluded evidence," the trial court's error was harmless. *Id*. at 12-13.

The Maryland Court of Special Appeals also found a waiver as to Vance's claim that the trial court erred when it allowed into evidence the prior consistent statements made by Bonner during his grand jury testimony. ECF 11-1 at 16-17. The court noted, *id.* at 17:

>It is true that the State originally argued for the admission of Bonner's statements under Md. Rule 5-802.1(B) and that the trial court agreed. However, when it came time to tell the jury what to do with this evidence, the State changed course and asked that the jury's use of these prior statements be restricted to impeachment. It was the appellant, not the State, who insisted and ultimately persuaded the trial court to tell the jury that it could use these statements as substantive evidence. In our view, although the initial basis for admission was erroneous, its appellate value disappeared when Vance asked for and received a jury instruction saying that the prior statements of Hester and Bonner could be used as substantive evidence. A party cannot ask for something at trial, receive it, and then complain on appeal that the trial judge gave him what he wanted, even if doing so is otherwise erroneous. . . . As a consequence, whether any or all of the prior statements of these witnesses should have been admitted as substantive evidence, limited to impeachment, or not admitted at all is waived.

With regard to Vance's claim that the evidence was insufficient to support a conviction for use of a handgun because no gun was ever recovered, the Court of Special Appeals agreed with the State's position that the circumstantial evidence that the victim was shot with a handgun was sufficient to support the jury's finding of guilt. ECF 11-1 at 19-22.

Vance's final claim, regarding use of demonstrative evidence at trial, was also rejected by the appellate court. The court observed that the State's expert witness "used a gun of the same caliber of both (1) the only bullets and (2) the only shell casings found at the scene" and the demonstration for the jury was of "the cartridge ejection process of the weapon, as he earlier described in his testimony about semi-automatic guns." *Id*. at 24. Under applicable Maryland law, "'demonstrative evidence helps jurors understand the testimony, but is otherwise unrelated to the case.'" *Id*. (citing J. Murphy, Maryland Evidence Handbook, § 1101 at 526).

In addition, the court said, ECF 11-1 at 24: "The demonstration assisted the jury in understanding how, where, and why shell casings would be found at the scene of this particular killing and that the gun used to kill Speaks likely was a semi-automatic and not a revolver." *Id*. The court also described the State's use of a toy gun during closing argument to explain how two cartridges ended up inside of Speaks's car as "a perfectly proper use of demonstrative evidence." *Id.* at 25.

As noted, on or about June 24, 2014, Vance's petition for writ of certiorari was denied by the Maryland Court of Appeals. *See Vance v. State*, 438 Md. 741 (2014).

On October 20, 2014, Vance filed a petition for writ of habeas corpus with the Circuit Court for Prince George's County, asserting that his custody was unlawful because the trial court did not properly dispose of his pre-trial motion to suppress. ECF 9-3 at 2. The circuit court denied the petition, without a hearing, on November 13, 2014,. *Id*.

On November 24, 2014, Vance filed an appeal of the denial of habeas relief. His appeal was dismissed by the Maryland Court of Special Appeals on May 5, 2016 (ECF 9-3), because "Vance's habeas corpus petition challenged the legality of his criminal conviction and sentence"

7

and "Md. Rule 8-602(a)(1) . . . provides that '[o]n motion or on its own initiative, the Court may dismiss an appeal . . . .[if] the appeal is not allowed by the rules or other law.'" *Id.* at 4.

Maryland's Uniform Post Conviction Procedure Act provides that if a person elects to pursue a claim by seeking a writ of habeas corpus, or other remedy outside of the procedures outlined by the Post Conviction Procedure Act, that person may not appeal the decision to the Court of Appeals or the Court of Special Appeals. *Id.* at 4-5 (citing Md. Code (2001, 2008 Repl. Vol.), Crim. Pro. Art. § 7-107(b)). The appellate court also noted that the lower court properly dismissed the petition because Vance's claim "raises the issue of a pretrial motion to suppress evidence which should have been raised during his first appeal." ECF 9-3 at 6, n. 3.

Vance filed his federal habeas petition in this court on January 12, 2018. ECF 1. He raises four claims: (A) the conviction was unconstitutional under *Batson v. Kentucky*, 476 U.S. 79 (1986), because the State challenged potential jurors solely on the basis of race; (B) his constitutional rights were violated when the trial court admitted prior inconsistent statements; (C) his constitutional rights were violated because the trial court did not rule on his motion to suppress and, as a result, unreliable identification evidence was admitted; and (D) his constitutional right to a speedy trial was violated. ECF 1 at 12-26.

As noted, respondents assert that Vance has not exhausted State remedies with respect to all but his first claim, and argues that, absent Vance's withdrawal of his unexhausted claims, the entire Petition should be dismissed. ECF 9. In his reply, Vance withdrew only his second claim (Claim "B"). ECF 14.

## II.     Standard of Review

8

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application

of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Pursuant to § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

Further, the habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

### III. Discussion

A.    *Batson* claim

Vance alleges that the prosecutor used peremptory challenges to strike African American women from the jury in violation of his right to due process and equal protection under the Fourteenth Amendment. "[T]he Equal Protection Clause forbids the prosecutor to challenge

potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), *as modified by Powers v. Ohio*, 499 U.S. 400 (1991).  Once a *Batson* objection is raised, the prosecutor is given the opportunity to offer "a race-neutral explanation" and upon finding the explanation to be "race-neutral" the trial court may deny the objection.  *See Thaler v. Haynes*, 559 U.S. 43, 44-45 (2010).

A three step process was established by *Batson*.  "'First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.'"  *Foster v. Chatman*, 136 S.Ct. 1737, 1747 (2016) (quoting *Snyder v. Louisiana*, 552 U.S. 242, 478 (2008)).

Respondents concede that Vance's *Batson* claim has been properly exhausted as it was presented to the Maryland Court of Special Appeals on direct appeal.  The Court of Special Appeals found the claim had not been preserved for appellate review but, in any event, that it lacked merit. *See* ECF 11-1 at 7-10.  The appellate court's rejection of this claim does not represent an unreasonable application of federal law and therefore is not a viable basis for federal habeas relief.  The view, expressed by the trial court and endorsed by the Maryland Court of Special Appeals, that peremptory challenges to potential jurors of the same race is not enough alone to support a valid *Batson* challenge, is without error.  Relief is denied on this claim.

B.      Remaining Claims

11

When filing a federal habeas corpus application under 28 U.S.C. § 2254, a petitioner must show that all of his claims have been presented to the state courts. 28 U.S.C. §2254(b) and (c); *see also Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider it. For a person convicted of a criminal offense in Maryland this may be accomplished either on direct appeal or in post-conviction proceedings. "A federal court may not grant a writ of habeas corpus to a state prisoner unless the petitioner has exhausted his state remedies." *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996) (citing 28 U.S.C. § 2254(b)).

Section 2254(b) provides:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture." *George*, 100 F.3d at 363 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether by failing to raise the claim in post-conviction proceedings or on direct appeal,

or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The Fourth Circuit explained in *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) :

If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620.[1]

---

[1] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*.; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a

Cause consists of "'some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time.'" *Bread*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

Vance has declined to withdraw his claims that his constitutional rights were violated when the trial court did not rule on his motion to suppress, allowing unreliable identification evidence to be admitted, and that his constitutional right to a speedy trial was violated. ECF 14 at 3-10.

In support of his claim regarding the motion to suppress, Vance states that Md. Rule 4-252 required the trial court to rule on the pretrial motion before the commencement of trial, but the trial court failed to do so in his case. *Id*. at 3. Vance raised a similar claim in his state court petition for writ of habeas corpus. ECF 9-3 at 2. Ultimately, the Court of Special Appeals found that Vance's habeas petition was not subject to appeal and was properly denied without a hearing by the circuit court, pursuant to Md. Rule 15-303(e)(3), permitting denial of a writ of habeas corpus if "the judge finds from the petition . . . there is no good reason why new grounds now raised by the petition was not raised in previous proceedings." ECF 9-3 at 5, n. 3. Vance's claim regarding the motion to suppress evidence "should have been raised during his first appeal" but was not. *Id*. The state court's dismissal of this claim is an independent and adequate ground for dismissal based upon a state procedural rule. Vance's claim, as presented, is procedurally defaulted.

---

reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

Vance appears to assert that this court should reach the merits of this claim to prevent a manifest injustice. ECF 14 at 5. He asserts: "The integrity of the truth determining process at [his] trial was unfair, resulting in the public erroneously concluding on the basis of unnecessarily suggestive confrontation that the right man has been caught and convicted." *Id*. In other words, Vance argues that the in-court identification by Hester was based on an unnecessarily suggestive pretrial identification by photo array and the trial court's failure to hold a hearing on his motion is reversible, constitutional error. *Id*.

Vance has not adequately stated cause for the default, nor prejudice that would result if the claim is not considered. Vance knew of the underlying factual basis of the claim at the time of his direct appeal, but he points to no state-created impediment to raising the claim. As noted by the Court of Special Appeals, the evidence of Vance's guilt was substantial and included testimony of two people, Hester and Bonner, who were not only well acquainted with Vance and the victim, but were also present when the shooting took place. *See* ECF 11-1 at 13 (noting evidence against Vance included two witnesses at the scene and in the car when victim was shot; video recording placing Vance and one of the two witnesses at the same Metro station shortly after the shooting; and Vance's thumbprint on the passenger door handle of the victim's car as well as two shell casings inside the car). In the context of the evidence adduced at trial, the claim need not be reached by this court in order to prevent a manifest injustice.

Vance's claim that he was denied his Sixth Amendment right to a speedy trial was never raised in his direct appeal or his subsequent state court habeas petition. This claim is therefore unexhausted and, by virtue of failing to include this claim in the direct appeal, the claim is procedurally defaulted. Vance argues that this court should reach the merits of this claim notwithstanding the procedural default because it implicates a "fundamental deprivation." ECF

15

14 at 6. He explains that the "erroneous interpretation and application of Md. Rules; which are contrary to existing precedent does not pass the 'Fundamental Fairness' test and infringes on Due Process of Law." *Id.*

The crux of Vance's claim is the manner in which requests for postponements of trials were decided by the circuit court and whether the administrative judge should be able to designate another judge to decide those requests. *Id.*; *see also* ECF 1 at 22-23. Vance claims that on January 10, 2012, he was "forced to waive my *Hicks*[2] so state could appoint me new counsel." ECF 1 at 23.

Maryland law requires the State to bring a defendant to trial within 180 days of the appointment of counsel or the appearance of counsel unless a postponement for good cause shown is granted by the trial court. *See* Md. Rule 4-271(a)(1). The assertion that the State's 180-day requirement has been violated does not implicate Petitioner's Sixth Amendment right to a speedy trial. Assuming the violation occurred, it is not a cognizable claim for federal habeas corpus relief. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Vance offers no explanation regarding why the speedy trial claim was not raised in State court proceedings, but implies that because the asserted violation was committed by the State he was somehow prohibited from raising the claim. Even if Vance could provide "cause" for the procedural default, the claim need not be reached to prevent a manifest injustice. Vance's assertions that in other cases where the 180-day rule was violated the charges were dismissed does

---

[2] *Hicks v. State*, 285 Md. 310, 403 A. 2d 356 (1979).

not demonstrate the type of prejudice warranting consideration of the merits of a procedurally defaulted claim. Federal habeas relief is denied on this claim.

      C.      Certificate Of Appealability

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). However, Vance is advised that he may ask the United States Court of Appeals for the Fourth Circuit to issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.

May 22, 2020                                         /s/
Date                                          Ellen L. Hollander
                                                 United States District Judge